PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JUSTIN TEAGUE, | ) |
| | ) CASE NO. 4:23 CV 01856 |
| Plaintiff, | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| COUNTY OF MAHONING, et al., | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) |

*Pro se* Plaintiff Justin Teague, an inmate previously detained in the Mahoning County Justice Center,[1] filed this *in forma pauperis* civil rights action under 42 U.S.C. § 1983 against the County of Mahoning; Mahoning County Commissioners Mr. Traffitanti, Mr. Ditzler, and Ms. Rimedio-Righettetti; Captain Kountz, Mahoning County Justice Center Warden; and Jerry Greene, Mahoning County Sheriff.[2] ECF No. 1. Plaintiff seeks monetary relief.

---

[1] Plaintiff is currently detained at Madison Correctional Institution. *See* Ohio Department of Rehabilitation & Correction, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A804200 (Last visited January 25, 2024).

[2] Plaintiff's initial Complaint did not include the individual names of the Mahoning County Commissioners. On October 26, 2023, however, Plaintiff filed a motion to amend his Complaint to include the names of Traffitanti, Ditzler, and Rimedio-Righettetti as Defendants. The Court grants Plaintiff's motion (ECF No. 3) and considers the claims raised against the newly named Defendants in this Order.

(4:23CV01856)

## I. Background

Plaintiff's Complaint concerns the conditions of his confinement at the Mahoning County Justice Center. He states that he is confined in a one-person cell with another inmate for 15 hours per day and the cell contains an inoperable toilet. ECF No. 1-1 at PageID#: 13. Plaintiff claims the Justice Center operates with "floating deputies" and the jail is understaffed. ECF No. 1-1 at PageID#: 13, 15. Plaintiff also claims that he has medical records that support the need for two mattresses yet he has been denied a second mattress. He states that he has been told that he does not meet the Justice Center's policy for a second mat. He claims that he has filed grievances regarding the mattress and "administration," including Captain Kountz and Wellpath nurses have "conspired to employ this flawed policy." ECF No. 1-1 at PageID#: 15, 16. Finally, Plaintiff claims that he is not provided fruit or fish. ECF No. 1-1 at PageID#: 17.

Plaintiff alleges that the conditions of his confinement constitute cruel and unusual punishment in violation of the Eighth Amendment. Liberally construing the complaint, Plaintiff appears to allege that he was denied medical care when Defendants denied him a second mattress. It also appears that Plaintiff claims Defendants' actions constitute a violation of the Ohio Administrative Code § 5120:1-8-04 and a federal court order, for which he references *Roberts et al v. County of Mahoning, Ohio, A Local Government Entity et al*, Case No. 4:03cv2329 (N.D. Ohio, filed Nov. 14, 2003) (Dowd, J.).[3] ECF No. 1-1 at PageID#: 14.

---

[3] This reference appears to be to a Consent Judgment Entry filed in *Roberts et al v. County of Mahoning, Ohio, A Local Government Entity et al*, Case No. 4:03cv2329 (N.D. Ohio, filed Nov. 14, 2003) (Dowd, J.), a civil rights action filed by eight detainees located in Mahoning

2

(4:23CV01856)

## II. Standard of Review

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The district court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief may be granted or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

County Jail. On May 17, 2007, a three-judge panel entered a Consent Judgment Entry "with a stipulated population order and retained jurisdiction over the Consent Entry for three years." *Id.* at ECF No. 292 at PageID#: 4659 (referencing ECF No. 266) (Batchelder, Dowd, Polster). The Panel's jurisdiction expired on May 17, 2010 by the terms of the Consent Entry. *Id.* at ECF No. 292. A stipulated motion to extend the Consent Entry was denied on May 18, 2010. *Id.* at ECF No. 292 at PageID#: 4660.

3

(4:23CV01856)

*Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

In reviewing a Complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. Analysis

#### A. Individual Capacity

As an initial matter, Plaintiff does not include any allegations in his Complaint that reasonably suggest any of the individual Defendants were personally responsible for the alleged constitutional violations on his list. A plaintiff cannot establish the individual liability of any defendant absent a clear showing that the defendant was personally involved in the activities that form the basis of his claims. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Absent allegations connecting Defendants to the specific actions, Plaintiff cannot hold them liable in their individual capacities.

#### B. Official Capacity

Furthermore, Plaintiff fails to state a claim against Defendants in their official capacities. An official capacity damages action against a state or municipal officer is the equivalent of an action against the public entity he or she serves. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Defendants are all employees of the county. Plaintiff's official capacity claims are therefore asserted against Mahoning County.

Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94

(4:23CV01856)

(1978). A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing. *Id.* A local government entity violates Section 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id.* A "municipal policy" includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 690, 694. A "custom" for purposes of *Monell* liability must "be so permanent and well-settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.

To demonstrate that the county's policies caused constitutional harm, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injur[ies] w[ere] incurred due to execution of that policy." *Brawner v. Scott Cty.*, 14 F.4th 585, 598 (6th Cir. 2021) (quoting *Morgan v. Fairfield County*, 903 F.3d 553, 566 (6th Cir. 2018) (internal quotations omitted)).

Moreover, violations of state regulations or correctional institute policies that are not also violations of federal constitutional rights are not actionable. *E.g., Davis v. Scherer*, 468 U.S. 183, 193 (1984) (violations of state regulations are not actionable under Section 1983); *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 421 (6th Cir. 2015) ("Failure to comply with jail policy is not a *per se* constitutional violation."); *Laney v. Farley*, 501 F.3d 577, 583 n.2 (6th Cir. 2007) (finding that a violation of the Wilson County Board of Education's policy granting students notice before suspension would not support a Section 1983 claim); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992) (rejecting the argument that deliberate

5

(4:23CV01856)

indifference can be shown through evidence that defendants failed to adhere to the Ohio Minimum Standards for Jails requirements for monitoring prisoners suspected of having suicidal tendencies).

Here, Plaintiff does not include sufficient facts to suggest that any of the conditions of confinement were the result of a county custom or policy, as opposed to the decisions of individual officers within the jail. To the extent he argues that Defendants' purported violation of an Ohio regulation constitutes a constitutional violation under Section 1983, he fails to state a claim. Moreover, even if Plaintiff had identified a county custom or policy, he fails to include any facts suggesting he has been harmed by the Justice Center's execution of the county's purported policy of double-bunking.

To the extent Plaintiff is attempting to invoke the Court's jurisdiction pursuant to the Consent Entry issued in the *Roberts* case, the Court is without jurisdiction as that agreement expired on May 17, 2010. Moreover, the Panel expressly limited any jurisdiction beyond May 17, 2010 to the plaintiffs' motion for contempt against the county for violations of the Consent Entry that occurred during the time the Consent Entry was in effect. *See Roberts*, Case No. 4:03cv2329 at ECF No. 292 at PageID#: 4660. Importantly, the Consent Entry was not in effect in August 2023, the date of Plaintiff's incarceration and the purported allegations. *See* ECF No. 1 at PageID#: 5.

**1. Conditions of Confinement**

Furthermore, even if Plaintiff's claims can be construed to have resulted from the county's customs or policies, Plaintiff fails to state a claim on which relief may be granted.

6

(4:23CV01856)

Because Plaintiff's Complaint pertains to conditions he alleges he experienced as a pretrial detainee, his constitutional protections originate from the Due Process Clause of the Fourteenth Amendment, which protects detainees from being "punished prior to an adjudication of guilt" rather than the Eighth Amendment, which applies to prisoners convicted of crimes. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Similar to claims of convicted prisoners asserting claims under the Eighth Amendment, a pretrial detainee's claims under the Fourteenth Amendment require that he demonstrate both subjective and objective components. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316-17 (6th Cir. 2023).

To satisfy the objective component, a pretrial detainee must demonstrate that he suffered a "sufficiently serious" condition or deprivation in the prison context. *Id.* at 317. In this regard, it is well-established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Prisoners are not entitled to unfettered access to the medical treatment of their choice, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999) (Suhrheinrich, J., concurring). Therefore, only allegations of "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" are sufficient to state a claim. *McMillan*, 503 U.S. at 8-9 (citations omitted).

To satisfy the subjective component, a pretrial detainee must show that a defendant "not only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at

7

(4:23CV01856)

596 (6th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)); *see also* *Helphenstine*, 60 F.4th at 317.

      Plaintiff's claims concerning the conditions of his confinement do not satisfy the objective showing that the alleged deprivation was sufficiently serious. Plaintiff complains of general overcrowding and understaffing at the Mahoning County Justice Center. He states that inmates are essentially double-bunked and the Justice Center "floats" their deputies due to understaffing. ECF No. 1-1 at PageID#: 13. Prison overcrowding, alone, does not violate the Constitution. *Rhodes*, 452 U.S. at 348; *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("Overcrowding is not, in and of itself, a constitutional violation"). In particular, double-celling, or double-bunking, by itself, does not violate the Constitution. *Bell*, 441 U.S. at 541-43 (holding that double-bunking of pretrial detainees in cells originally designed for one person for two months does not violate the Constitution); *Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003). Rather, a plaintiff bears the burden of showing that the crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other necessities. *Rhodes*, 452 U.S. at 348. Here, Plaintiff fails to include any factual allegations that suggest this purported overcrowding has deprived him of basic human needs. He merely states in a conclusory fashion that he "has suffered ... the injustice of ... being locked away in a cell because of understaffing." *See* ECF No. 1-1 at PageID#: 15. Therefore, his bare allegations of general overcrowding and understaffing, without more, do not establish a constitutional deprivation.

8

(4:23CV01856)

Plaintiff also claims that the cell's toilet was "no[t] working." ECF No. 1-1 at PageID#: 13. The Sixth Circuit has recognized on more than one occasion that the Constitution does not require flushable toilets in prison. *See, e.g.*, *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Rhodes*, 452 U.S. at 347) (a prisoner's claims alleging that he was deprived of a lower bunk, subjected to a flooded cell, and deprived of a working toilet amounted to "only temporary inconveniences and did not demonstrate that [his] conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency"); *Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at *2 (6th Cir. Nov. 12, 1999) (table) (the "Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets"); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) ("We do not agree that it violates the Eighth Amendment to require prisoners to use nonflushable toilets on occasion."). Plaintiff has therefore failed to allege facts demonstrating that temporary placement as a detainee in a cell with a "non-working" toilet is an extreme deprivation of a basic necessity and a violation of the Constitution.

Plaintiff alleges that he is not provided fruit or fish in the Justice Center. "Prisoners have a constitutional right to meals that meet their nutritional needs...[b]ut there is no constitutional right for each prisoner to be served the specific foods he desires[.]" *Robinson v. Jackson*, 615 Fed. App'x. 310, 314 (6th Cir. 2015). Nor does the Constitution require that jail food be tasty or widely varied. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). Indeed, the Sixth Circuit has held that a diet consisting solely of food loaf does not violate the Constitution when nutritional and caloric needs are met. *See, e.g., Payton-Bey v. Vidor*, No. 94-2472, 1995

9

(4:23CV01856)

WL 603241 (6th Cir. Oct. 12, 1995) (table). Here, although Plaintiff claims that fruit and fish are "two major food groups missing from the food pyramid," he has not alleged sufficient facts demonstrating that the food he was provided failed to fulfill his nutritional needs. His desire for additional food choices is insufficient. He therefore fails to demonstrate his diet violated the Constitution. *See Sims v. Mich. Dep't of Corr.*, 23 Fed. App'x 214, 216 (6th Cir. Aug. 8, 2001).

### 2. Medical Care

Finally, Plaintiff appears to claim that he was deprived of medical care when Defendants refused to provide him a second mattress. Plaintiff claims that his medical records supported the need for a second mattress. According to Plaintiff, he "was informed" that he "didn't meet the [Justice Center] policy for a second mat." ECF No. 1-1 at PageID#: 15. He claims that Defendants, as well as various medical providers who are not named as defendants, have "conspired to employ this flawed policy" and they have "continued to inflict pain and suffering by a continued denial of a doctor's order [of a second mattress]." ECF No. 1-1 at PageID#: 16.

As previously discussed, to demonstrate that the county's policies caused constitutional harm, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injur[ies] w[ere] incurred due to execution of that policy." *Brawner*, 14 F.4th at 598 (quoting *Morgan v. Fairfield County*, 903 F.3d 553, 566 (6th Cir. 2018) (internal quotations omitted). Here, Plaintiff has failed to identify a specific custom or policy that can be connected to the county. The general use of the term "policy" does not demonstrate the alleged policy of prohibiting a second mattress as that of Mahoning County and not of individual employees in the Justice Center. The Court cannot hold the county liable for

10

(4:23CV01856)

the "policy" decisions of individuals employed by the county. Plaintiff has simply not alleged sufficient facts to demonstrate a county policy that deprived him of a Constitutional right.

Even if Plaintiff had successfully demonstrated a county policy of denying inmates a second mattress, he fails to state a claim. To demonstrate deliberate indifference brought under the Fourteenth Amendment by a pretrial detainee, a plaintiff must demonstrate (1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or "recklessly failed to act reasonably to mitigate the risk the serious medical need posed." *Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023) (quoting *Greene v. Crawford County*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner*, 14 F.4th at 597). Stated differently, "a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee." *Grote*, 85 F.4th at 405 (citing *Helphenstine*, 60 F.4th at 317). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).

Here, Plaintiff has failed to allege sufficient facts demonstrating he has been denied medical care. Although he claims that his medical records "support the need" for a second mattress and he claims to have a "doctor's note," he fails to identify a medical condition that warrants a second mattress, the physician who prescribed a second mattress, and when and where the physician prescribed the mattress. Plaintiff indicates that the alleged constitutional violations

11

(4:23CV01856)

occurred on August 24, 2023, presumably when Plaintiff entered the detention facility. He filed this Complaint on September 25, 2023– one month later. Arguably, Plaintiff received the physician's note prior to his detention at the Justice Center and during incarceration or detention at a different facility. There are simply not enough facts from which the Court can discern whether Plaintiff's medical condition is an existing condition warranting a second mattress, rather than a prior injury or illness suffered during a prior incarceration/detainment from which Plaintiff may have long since recovered. The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). Plaintiff has therefore failed to state a claim for the denial of medical care.

### IV. Conclusion

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief may be granted, and the Court dismisses his Complaint (ECF No. 1) pursuant to 28 U.S.C. § 1915(e). Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

| January 26, 2024 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |